UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24517-DSL

SOCKET SOLUTIONS, LLC,

       Plaintiff,

v.

IMPORT GLOBAL, LLC,

       Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiff Socket Solutions, LLC ("Socket Solutions") Motion for Preliminary Injunction (ECF No. 12).  Defendant Import Global, LLC ("Import Global") filed a Response (ECF No. 22), to which Plaintiff filed a Reply (ECF No. 24).  This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida to take all action as required by law on Plaintiff's Motion for Preliminary Injunction. (ECF No. 23).  The undersigned conducted an evidentiary hearing on the Motion on May 7, 2024.  Having reviewed the Motion, Response, Reply, the evidence and argument advanced at the hearing, and the docket as a whole, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction be **GRANTED**.

## I.      BACKGROUND

Plaintiff Socket Solutions sells products under its trademarked brand, Sleek Socket.  The product at issue is a flat cover for an electrical wall outlet that includes an extension cord and a

1

power strip.  Socket Solutions contends that the product functions to blend electrical wall outlets with the rest of the wall and to eliminate cords protruding from the wall outlet.  Socket Solutions patented this invention, U.S. Patent No. 9,509,080 (the "'080 Patent"), and primarily sells the product on Amazon.com ("Amazon").  Socket Solutions filed the instant action asserting that Defendant Import Global is selling a similar product and infringing on its '080 Patent.  Socket Solutions asserts claims for direct patent infringement of the '080 Patent, Count I; patent infringement inducement, Count II; and false advertising, in contravention of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Count III.  (ECF No. 31).

Defendant Import Global sells a variety of products on Amazon.  Import Global's product accused in the instant action is the Neat Socket (the "Accused Product").  Import Global represents that, in creating the Neat Socket, it hired a patent attorney to invent a non-infringing product similar to the Sleek Socket.  Import Global's product similarly blends electrical wall outlets in with the rest of the wall and includes an extension cord and power strip.

After filing the instant action, Socket Solution moved for a preliminary injunction requesting that Import Global be enjoined from selling the Neat Socket on Amazon or elsewhere in the United States.  For the purposes of the instant Motion, Socket Solution asserts one representative claim, Claim 19, of the '080 Patent.  Claim 19 reads:

> An apparatus for hiding a standard indoor electrical wall outlet having at least two receptacles while affording continued use of said outlet, the apparatus comprising:
>
> a. a cover comprising:
>
> (i) a frontplate; and
>
> (ii) a backplate comprising at least one set of electrical prongs including a hot prong, a neutral prong, and optionally a ground prong, positioned to correspond to a first receptacle of the wall outlet; and
>
> b. an electrical cord extending from the backplate, or the cover, said cord comprising at the cords proximal end: at least one hot pin, at least one neutral

> pin and optionally a ground wire positioned on or fastened or attached to the backplate of the cover in such manner as to minimize distance between the front plate and the backplate, and respectively connected to or associated with the hot prong, neutral prong and any ground prong on the exterior of the backplate; and comprising at the cords distal end at least one receptacle, and wherein the height of the hot pin, neutral pin, and any ground wire is approximately the same or less than the thickness of the cord.

'080 Patent at 8:65–9:20. Socket Solutions alleges that the Accused Product literally infringes on Claim 19.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction. Fed. R. Civ. P. 65.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Revision Mil. Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Therefore, the plaintiff must show "whether success is more likely than not." *Id.* at 526.  "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (quoting *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

"Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims, followed by (2) comparing the properly interpreted claims to the accused device." *Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 2254467, at *8 (S.D. Fla. May 27, 2022)

(quoting *A.W. Indus. Inc. v. Elec. Connector Serv. Inc.*, No. 97-6452-CV, 1997 WL 873869, at *7 (S.D. Fla. Dec. 9, 1997), *report and recommendation adopted*, No. 21-CV-61035-RAR, 2022 WL 2237176 (S.D. Fla. June 21, 2022)).  In order to demonstrate a likelihood of success on the merits, Socket Solutions must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) Socket Solutions will likely prove that Import Global infringes the '080 Patent, and (2) Socket Solutions' infringement claim will likely withstand Import Global's challenges to the validity and enforceability of the '080 Patent.  *See Amazon.com, Inc.*, 239 F.3d at 1350–51.  If Import Global raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove "lacks substantial merit," the preliminary injunction should not issue.  *Id.*

"Patent infringement, whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence." *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011).  Resolving infringement claims is a two-step process.  *N. Am. Container Corp. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005).  First, the Court must construe genuinely disputed claim terms as a matter of law.  *See id.* This step is equally necessary for the Court's assessment of Defendant's invalidity challenges. *Amazon.com, Inc.*, 239 F.3d at 1351.

For purposes of this Motion, only two Claim terms were meaningfully disputed: "pin" and "backplate;" Defendant additionally challenged other terms for indefiniteness. The undersigned considers those contested terms first.

<em>i.</em>     Pin

Defendant first asserts that the Accused Product does not infringe the '080 Patent because it does not have a "hot pin" or "neutral pin," as required by Claim 19.  Defendant argues that the

4

"pins" referred to in Claim 19 require a physical clasp to hold the connection between the requisite wiring to the respective prongs. Defendant asserts that Neat Socket does not utilize pins, but rather utilizes solder to conduct an electrical connection. Defendant contends that the soldered connections cannot be considered a pin because the liquid solder is integrated into the wires and are not independently distinguishable from the wires.

Plaintiff argues that that the term "pin" refers to a structure that electrically connects the wires from the cord with the electrical prongs, which is inclusive of the solder connection that the Accused Product utilizes. Plaintiff contends that Defendant is impermissibly narrowing the '080 Patent to solely apply to metal clamps, a limitation that is not found in the claim language. Plaintiff asserts that Defendant is attempting to impermissibly import a limitation from Claim 1 and a preferred embodiment.

Plaintiff's evidentiary hearing was conducted prior to the Parties' briefing on claim construction. The undersigned held the matter under advisement pending the *Markman* hearing, which was conducted on July 18, 2024. With the benefit of full briefing, the undersigned has recommended claim construction on the six terms submitted by the Parties. *See* (ECF No. 73). As set forth in that Report and Recommendation, Defendant's proposed construction would improperly limit the term to be defined by one preferred embodiment in the specification. Rather, the essential feature of the pin taught in Claim 19 is not the physical clamp that affixes the pin to the backplate, as illustrated in the specification figures, but the function it brings to the apparatus: it is an electrical connector between the wires from the cord to the electrical prongs on the backplate. Accordingly, the undersigned has recommended that the Court construe the term "pin" as "a means for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong."

ii.     *Backplate*

Defendant asserts that the Accused Product does not infringe Claim 19 because the electronic components of the Accused Product are attached to the frontplate of its product, not the backplate as required by Claim 19.

Socket Solutions' Sleek Socket has two plates that comprise the cover: a frontplate and backplate, with the electrical prongs, hot pin, neutral pin, and the ground wire connected to the backplate.

Import Global's Neat Socket is composed of three pieces, a plate that the Parties do not dispute is the frontplate facing away from the outlet; a larger plate that is closest to the wall outlet; and a smaller plate in between the two that has the electrical components mounted on it and is screwed onto the front plate.  Socket Solutions has termed this smaller plate as the inner backplate, and the larger plate, the outer backplate.   Socket Solutions argues that Neat Socket's inner backplate satisfies Claim 19's requirement of a backplate comprising at least one set of electrical prongs including a hot prong, a neutral prong, and optionally a ground prong, and thus infringes on its '080 Patent.

Defendant asserts that Plaintiff's labeling of the inner plate as an "inner backplate" is misleading.  Defendant argues that its electrical prongs, hot pin, neutral pin, and the ground wire are not connected to the backplate, but instead are connected by screws to the frontplate and its electrical prongs pass through the openings in the larger outer plate, which it claims is the backplate that has no electrical components attached.  Thus, Defendant argues that the Accused Product does not infringe the '080 Patent.

In briefing this Motion, the Parties did not advance proposed definitions for the term backplate. At the evidentiary hearing, they advanced definitions that were consistent with those

6

advanced in their briefing on claim construction. The undersigned has, after considering that briefing and conducting a *Markman* hearing, recommended that the Court construe the term backplate as "the component of the cover, opposing the front plate, that includes at least one set of electrical prongs." As more fully explained in the Report and Recommendation on Claim Construction (ECF No. 73), Defendant's proposed definition, which limits the claim to a preferred embodiment and defines the backplate solely by a position to the wall as opposed to in relation to its functionality, finds no support in the specification.

### 1.    The Validity of the '080 Patent

Section 101 of the Patent Act defines the subject matter eligible for patent protection.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.

To obtain a preliminary injunction, Socket Solutions must show that it "will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

> If an alleged infringer attacks the validity of a patent at the preliminary injunction stage, as [Defendant] has, it bears the initial burden 'to come forward with evidence of invalidity,' just as it would at trial.  If the alleged infringer comes forward with such evidence, the district court should then consider 'the evidence on both sides of the validity issue' to determine if the alleged infringer has raised a substantial question of validity.

*BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022) (citations omitted) ("Again, the ultimate burden is on [Plaintiff] to show that it is likely to succeed on the merits to obtain the extraordinary remedy of a preliminary injunction, including 'on the validity issue.'  But the initial burden is on [Defendant] to produce some evidence to raise a substantial question of validity.").  "At the preliminary injunction stage, after the accused infringer successfully raises a

substantial question of invalidity, the burden shifts to the patentee to demonstrate that the accused infringers' invalidity defenses lack substantial merit." *Biomedical Device Consultants & Lab'ys of Colo, LLC v. ViVitro Labs, Inc.*, No. 2023-2393, 2024 WL 1318251, at *6 (Fed. Cir. Mar. 28, 2024).

i.     Indefiniteness

Defendant argues that several terms in Claim 19 render it indefinite.  Defendant contends that "minimize the distance" between the frontplate and backplate renders the '080 Patent indefinite because the plates touch, thus the distance between the plates cannot be minimized. Defendant asserts that the term "approximately" is indefinite because it is an ambiguous limitation and there is no known or usual definition of the term.

Plaintiff argues that terms of degree, such as approximately and minimize the distance, do not render a patent indefinite.  Plaintiff asserts that the requirement to minimize the distance is in reference to the space between the plates where the pins are located so that the product can lay as close to the wall as possible.

"A claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015).  "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014).  When a claim limitation is defined in "purely functional terms," a determination of whether the limitation is sufficiently definite is "highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area)." *Biosig Instruments, Inc.*, 783

8

F.3d at 1378.

Claim 19 reads, "at least one hot pin, at least one neutral pin and optionally a ground wire positioned on or fastened or attached to the backplate of the cover in such manner as to **minimize** distance between the front plate and the backplate," and "the height of the hot pin, neutral pin, and any ground wire is **approximately** the same or less than the thickness of the cord." '080 Patent at 9:9–16; 9:19–20 (emphasis added).

Defendant first has not met its initial burden "to come forward with evidence of invalidity." *See BlephEx, LLC*, 24 F.4th at 1399 ("[T]he initial burden is on [defendant] to produce *some* evidence to raise a substantial question of validity.") (emphasis added). In asserting various terms are indefinite, Defendant offers no intrinsic or extrinsic evidence to suggest that the scope of the invention cannot be determined with reasonable certainty. Defendant provides no support for its assertions beyond attorney argument, and even in citing to caselaw fails to explain the caselaw's relevance or applicability.

Notwithstanding its failure to substantiate its challenge with evidence, the undersigned has considered the argument and find that Defendant has not raised a substantial question of validity. *See id.* ("If the alleged infringer comes forward with [evidence of invalidity], the district court should then consider 'the evidence on both sides of the validity issue' to determine if the alleged infringer has raised a substantial question of validity.").

Starting with the term "minimize the distance," Plaintiff demonstrated at the hearing that the thickness of the device, *i.e.* the distance between the frontplate and backplate, is constrained by the electrical cord that has a fixed height—a representation that Defendant did not dispute. Plaintiff argues that the term "minimize the distance" refers to the limitation that the electrical components not be positioned in a manner that would expand the device beyond the height of the

cord, because the device can never be thinner than the cord allows.  The claim language itself provides support for this view in that the electrical components must be "approximately the same or less than the thickness of the cord." '080 Patent at 9:19–20.  Indeed, the specification informs that "[t]he maximum distance between the backplate component 14 and the frontplate component 12 is approximately the height or thickness of the electrical cord 16 connected to or attached to the backplate component 14." '080 Patent at 3:56–59; *see also id.* at 4:35–42 ("Cover 15 is as thin as the thickness of the combination of the frontplate component 12 mounted on the backplate component 14 and the electrical pins 18 and 28, the ground wire 19, and electrical cord 16 in between the components 12 and 14.  This combined thickness, or thinness, is less than about an inch and also is less than the thickness of a typical baseboard at the base of a wall in preferred embodiments.").  Though the claim language of minimize the distance is a term of degree, it provides objective boundaries—the fixed thickness of the cord—"'for those of skill in the art' in the context of the invention to be definite." *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1349 (Fed. Cir. 2022).

Defendant's argument that the frontplate and backplate's edges touching complicates the definiteness of "minimize the distance" does not alter this finding.  As reproduced above, the specification teaches that the cover is as thin as the thickness of the combination of the frontplate, backplate, and the electrical components in between the frontplate and backplate.  *See* '080 Patent at 4:35–42.  When Claim 19 references minimizing the distance between the frontplate and backplate, it is referencing the thickness, or thinness, of the electrical components of the cover as determined by the electrical pins, the ground wire, and electrical cord in between the frontplate and backplate.  Indeed, the claim language that proceeds this asserted indefinite term confirms said understanding, "at least one hot pin, at least one neutral pin and optionally a ground wire *positioned*

*on or fastened or attached to the backplate of the cover in such manner* as to minimize distance between the front plate and the backplate." '080 Patent 9:9–14.

Regarding the term "approximately," the claim recites "the height of the hot pin, neutral pin, and any ground wire is **approximately** the same or less than the thickness of the cord." '080 Patent at 9:19–20. "[W]ords of approximation . . . are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310–11 (Fed. Cir. 2003) (internal quotations omitted); *Interval Licensing LLC*, 766 F.3d at 1370 ("[T]erms of degree such as 'substantially,' 'about,' or 'closely approximate' do not necessarily render the claim indefinite, so long as the term 'provide[s] enough certainty to one of skill in the art when read in the context of the invention.'"). "The term 'approximately' allows the patentee to avoid an otherwise 'strict 100%'" vertical boundary. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, No. 15 CIV. 10154, 2018 WL 3773986, at *8 (S.D.N.Y. Aug. 9, 2018). Similar to the term "minimize the distance," approximately is a term of degree that is subject to the objective boundary of the fixed thickness of the cord. *See Niazi Licensing Corp.*, 30 F.4th at 1349.

As the Federal Circuit has noted, "expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). Plaintiff advances the expert declaration of Matthew Spenko, a mechanical engineer, who opines that a person of ordinary skill in the art with respect to the '080 patent is someone with a Bachelor of Science degree in mechanical or electrical engineering or its

equivalent, who has an understanding of basic principles of electricity and mechanical design. (ECF No. 59-2 at ¶ 12).  In his Declaration, he attests that a person having ordinary skill in the art would understand the term "approximately" as having its ordinary meaning of "about," or not significantly more or less than." (*Id.* at ¶ 43). He explains the degree of precision required in engineering depends on the nature of the product, reflected in manufacturing tolerances, which set the limits on the acceptable degree of variance from a precise value. Considering the nature of this invention, he attests that a person having ordinary skill in the art would not expect a high degree of precision. The expert's testimony, I find, provides useful background for determining whether a person of ordinary skill in the art would understand the term "approximately" in the Claim as a term of degree, and find his testimony that it would be capable of being understood uncontroverted and credible.

Despite Defendant's challenge that the specification's use of "approximately" lacks clear definition, the specification does in fact provide "certain inherent parameters of the claimed apparatus, which to a skilled artisan may be sufficient to understand the metes and bounds of 'spaced relationship. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (rejecting indefiniteness challenge to contested term "spaced relationship").

And, thus, with an objective boundary and in the absence of any evidence to the contrary, the term "approximately" provides reasonable certainty in the specific context of the present invention.[1]

###### ii.      *Anticipated and/or Obviousness*

Defendant argues that the '080 patent is invalid as it is obvious and/or anticipated.

---

[1]  Defendant further argues that Claim 19's limitation that a ground wire be "positioned on or fastened or attached to the backplate of the cover" is indefinite because it is not clear what this limitation entails, and the '080 Patent contains contradictions.  Defendant does not point to what renders the language indefinite but rather relies on contradictions between Claim 19 and Claims 1 and 2.  Claims 1 and 2, which are not at issue, describe an apparatus not at issue here.

Defendant asserts that the '080 Patent is anticipated or rendered obvious by U.S. Publication No. 2015/0255916 (the "Kao Reference") because every component in Claim 19 is present in the Kao Reference.  Defendant further asserts that the '080 Patent is rendered obvious in view of U.S. Application Publication No. 2014/0213104 (the "Hector Jr. Reference") combined with the Kao Reference.

Plaintiff contends that Defendant fails to perform the proper anticipation or obviousness analysis.  Regarding anticipation, Plaintiff argues that the Kao Reference does not contain every limitation in Claim 19, such as the wall outlet cover having "at the cord's distal end at least one receptacle."  As for obviousness, Plaintiff argues that Defendant fails to indicate why a person of ordinary skill in the art would be motivated to combine the Kao Reference and the Hector Jr. Reference as required.  Plaintiff further asserts that, even in combination, neither of the references disclose "the height of the hot pin, neutral pin, and any ground wire is approximately the same or less than the thickness of the cord" as required by Claim 19.

"A patent is invalid if it is either anticipated or obvious in view of prior art." *Fusilamp, LLC v. Littelfuse, Inc.*, No. 10-20528-CIV, 2010 WL 3446913, at *4 (S.D. Fla. Aug. 31, 2010). "A determination that a claim is invalid as being anticipated or lacking novelty under 35 U.S.C. § 102 requires a finding that 'each and every limitation is found either expressly or inherently in a single prior art reference.'" *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (quoting *Celeritas Techs. Inc. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998)).  At the preliminary injunction stage, the challenger need only raise a substantial question of invalidity and as such, its burden of proof is less than the clear-and-convincing standard Defendant will face later. *Amazon.com, Inc.*, 239 F.3d at 1359. The movant bears the burden of presenting a "clear case" supporting the patent in suit, which may be accomplished via evidence

that the patent has withstood prior challenges or that it has enjoyed a long period of industry acquiescence to its validity. *See id.*

Though Defendant comes forward with a prior art reference, Defendant does not further expand beyond conclusory argument how the prior art reference anticipates Claim 19. Defendant does not review Claim 19 in comparison to the text of the Kao Reference. Instead, Defendant merely attaches an exhibit to its Response that displays figures from the Kao Reference alongside the language from Claim 19. (ECF No. 22-8). Establishing that a prior art reference discloses each and every claim element and limitation is not a "perfunctory exercise." *See Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, No. 12-CV-691-T-24, 2014 WL 4545857, at *5 (M.D. Fla. Sept. 12, 2014). It is not the Court's duty to make Defendants' arguments and search the record for evidence supporting those arguments. *See id*. Moreover, even with the attached exhibit and as Plaintiff notes, Defendant does not identify how the Kao Reference discloses Claim 19's limitation that the wall outlet cover has "at the cord's distal end at least one receptacle" or that "the height of the hot pin, neutral pin, and any ground wire is approximately the same or less than the thickness of the cord." '080 Patent at 9:15–19.

As to obviousness, under 35 U.S.C. § 103, a claim is obvious and thus invalid if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *See* 35 U.S.C. § 103(a). "Whether a claim would have been obvious within the meaning of 35 U.S.C. § 103 is a question of law based on underlying findings of fact." *Oakley, Inc.*, 316 F.3d at 1339. Specifically, the pertinent factual findings are: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) evidence

of secondary factors, known as objective indicia of non-obviousness." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1007 (Fed. Cir. 2009); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1295 (Fed. Cir. 2012).

Beyond conclusory argument that the Kao Reference and the Hector Jr. Reference support a finding of obviousness, Defendant does not address the four questions of fact to be reviewed by this Court.  While at this stage Defendant need only raise a substantial question that Claim 19 is obvious, Defendant's conclusory argument fails to meet even this burden.  Indeed, Defendant does not attempt to demonstrate that there is "some suggestion, motivation, or teaching in the prior art that would have led a person of ordinary skill in the art to select the references and combine them in the way that would produce" Claim 19.  *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1385 (Fed. Cir. 2001); *Sanofi-Synthelabo v. Apotex Inc.*, 488 F. Supp. 2d 317, 336 (S.D.N.Y.), *aff'd*, 470 F.3d 1368 (Fed. Cir. 2006) ("[M]ere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole. Rather, a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them." (quoting *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1336 (Fed. Cir. 2006))).

While Defendant has presented some evidence to support its arguments of anticipation and obviousness, the evidence presented fails to raise a substantial question as to the validity of Claim 19 on the basis of anticipation or obviousness.  Thus, the undersigned finds that Socket Solutions' infringement claim will likely withstand Import Global's challenges to the validity of the '080 Patent at this posture.

## 2.      Infringement of Claim 19

Turning to the question of infringement, the Court compares Claim 19 with the accused product to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *Amazon.com, Inc.*, 239 F.3d at 1351. While claim construction is a question of law, determination of infringement is a question of fact. *See Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 93 Fed. App'x 225, 230 (Fed. Cir. 2004). Infringement can only be found if every claim or an equivalent is found in the accused device. *Flexiteek Ams., Inc. v. Plasteak, Inc.*, No. 12-cv-60215, 2013 WL 6233175, at *2 (S.D. Fla. Dec. 2, 2013), *aff'd*, 603 Fed. App'x 994 (Fed. Cir. 2015).

Having examined an example of the Accused Product at the hearing, it appears remarkably similar to the claimed invention—indistinguishable even, until disassembled. The Accused Product is an outlet cover, very thin, with an electrical cord descending from its back (wall facing) side. Between the plates, the Accused Product exhibits a cord, with electrical components mounted on a small plate that opposes the front plate. The electrical wires are attached to the small backside plate and positioned flat on the plate to which it is soldered.

Defendant lodges three primary contentions of non-infringement. Defendant argues that the Accused Product does not have pins as it utilizes solder instead, which is not compressed like the metal clamps depicted in the '080 Patent. Defendant asserts the Accused Product's electrical components are not mounted on the backplate, but rather the frontplate. Defendant further asserts that the Accused Product does not minimize the distance between the frontplate and the backplate because the separation between the frontplate and backplate is determined by ridges located on the front plate.

Plaintiff responds that the Accused Product's use of solder satisfies Claim 19's pin

requirement and use of compression or metal clamps for the pins is not a restriction found in the claim language. Plaintiff contends that the Accused Product's electrical components are mounted on the backplate, which is screwed into the frontplate, Defendant argues this is distinguishable from being mounted on the frontplate. Plaintiff asserts the Accused Product infringes the '080 Patent literally, but even if the electrical components of Defendant's product can be considered attached to the frontplate, under the doctrine of equivalents, Plaintiff asserts the Accused Product would function exactly as Plaintiff's product and thus still infringe the '080 Patent. Plaintiff asserts that the ridges located on the frontplate do not impact the non-infringement analysis because it defines the distance between the frontplate and the plate located next to the wall socket, not the distance between the frontplate and backplate.

Regarding the Accused Product's use of solder, as discussed previously, the term "pin" has been construed as "a means for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." This definition is inclusive of the Accused Product's use of solder, which Defendant does not dispute is used as an electrical connector between the wires and the electrical prongs.

Defendant argued that the "pin" taught in Claim 19 has an appreciable, measurable height; Defendant contends that solder cannot be measured for height and thus the Accused Product lacks the limitation of a "pin." Claim 19 does not restrict the height of the pin to a minimum height but rather seeks to minimize the distance between the plates attributable to the electrical components, of which the pin is one, to no greater than the thickness of the cord. The Accused Product meets this limitation by the use of solder.

Turning to whether the Accused Product's electrical components are attached to the frontplate or the backplate, as discussed previously, the term "backplate" has been construed as "a

means for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." The Accused Product is composed of three pieces, a plate that the Parties do not dispute is the frontplate facing away from the outlet; a larger plate that is closest to the wall outlet; and a smaller plate in between the two that has the electrical components mounted on it and is screwed to the front plate, as depicted below.

 

(ECF No. 24 at 7, 8) (photos of the Accused Product produced by Plaintiff).

The component of the cover that is opposite of the frontplate, as depicted above (left), is the smaller plate found in the interior of the Accused Product's two larger plates. The inner backplate has one set of electrical prongs including a hot prong, a neutral prong, and a ground prong as demonstrated above and by the submission of a sample of the Accused Product at the hearing. In the photo above (left), the backplate of the Accused Product is located at the top of the cord and has a set of prongs protruding from it. In this photo, the backplate is screwed onto the frontplate. The photo to the right reveals the internal face of the backplate when it is unscrewed

from the frontplate, revealing the electrical components between the plates. In this photo, the backplate is mounted on the Accused Product's outer most plate, through which the prongs are passed to reach the wall outlet.

As the photos make clear, the smaller plate satisfies the limitations of the backplate taught in Claim 19. That the backplate is screwed into the frontplate in the Accused Product does not alter this finding.  Rather, the limitation requires that the electrical components be mounted on the backplate, which the Accused Product exhibits.

As for Defendant's argument that the Accused Product has ridges present on the frontplate of the Accused Product that define the distance between the frontplate and the backplate, this feature of the frontplate does not defeat infringement.  Claim 19 requires that "at least one hot pin, at least one neutral pin and optionally a ground wire positioned on or fastened or attached to the backplate of the cover in such manner as to minimize distance between the front plate and the backplate."  '080 Patent at 9:9–13.  The fact that the Accused Product has ridges that define the distance between the frontplate and an additional outer plate is not relevant to whether the electrical components of the Accused Product are attached in a manner to minimize the distance between the frontplate and backplate, the backplate here being the smaller plate with the electrical components fixed to it.  Minimizing the distance, as demonstrated by the claim language, refers to the electrical components' height rather than the thickness of the device as a whole—which the ridges affect in the Accused Product.  Thus, the presence of ridges on the frontplate do not impact the analysis of whether the Accused Product infringes Claim 19.

In light of the evidence before the Court at this preliminary stage in the proceedings, it is more likely than not that the Accused Product infringes Claim 19.  Accordingly, the Court determines that Plaintiff has demonstrated a reasonable likelihood of success on its patent

infringement claim.

**B.  Remaining Preliminary Injunction Factors**

Defendant does not meaningfully dispute the remaining factors of irreparable harm, balance of the harms, or public interest.  Defendant asserts in its briefing that it elects to only address the first factor of likelihood of success on the merits.  At the hearing, Defendant solely disputed the weight of Plaintiff's evidence as it pertains to irreparable harm.

Regarding irreparable harm, this "inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Id.*  In addition, "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).  Moreover, "the mere possibility of future monetary damages does not defeat a motion for preliminary injunction." *Celsis In Vitro, Inc.*, 664 F.3d at 930. Irreparable harm is presumed when a clear showing of patent validity and infringement has been made. *Amazon.com, Inc.*, 239 F.3d at 1350.

Plaintiff maintains that it will suffer irreparable harm in the absence of an injunction because Defendant directly competes with Plaintiff in Amazon's marketplace in the niche market that it created with its product.  (ECF No. 12-1 at ¶¶ 32, 54) (Declaration of Michael George Insalaco, owner and founder of Socket Solutions).[2]  Plaintiff adds that the Accused Product is

---

[2] Defendant objected to the weight that should be given to Insalaco's Declaration as it pertains to its characterizations of market share loss because it fails to provide support for those ascertains.  The Court agrees with Defendant that Insalaco's assertions of market share loss lack meaningful substantiation and thus should be afforded less weight.  However, Defendant does not provide contrary evidence on this point at this posture, other than the fact that other alleged infringers too make up the market.  Thus, the undersigned will still consider Insalaco's assertions in this inquiry, albeit with less weight than if the assertions were substantiated.

advertised next to its products when customers search in Amazon for its product. (*Id.* at ¶ 55). According to Insalaco, the Accused Product negatively impacts Plaintiff's goodwill and reputation because, despite the fact the products look similar, the Accused Product lacks the same safety certification that Plaintiff's product has. (*Id.* at ¶¶ 56, 58, 59). In addition, Insalaco attests that the harms to Plaintiff cannot be compensated for with monetary damages because the loss of market share may cause Socket Solutions to lose its "#1 Best Seller" and "Most Wished For" designations on Amazon and Defendant's infringement harms Plaintiff by diverting its corporate time, resources, and energy, both non-compensable harms. (*Id.* at ¶¶ 62, 65).

Upon consideration of the foregoing, uncontroverted evidence, the Court finds that Plaintiff has demonstrated that it is likely to suffer irreparable harm, in the absence of an injunction, that money damages would be inadequate to redress. "Significantly, [Plaintiff] has shown that the parties are in direct competition." *Advantus, Corp. v. T2 Int'l, LLC*, No. 313CV240J99MMHTEM, 2013 WL 12122313, at *11 (M.D. Fla. May 30, 2013) (citing to *Presidio Components, Inc.*, 702 F.3d at 1363). In addition, the evidence that if Defendant continues to sell the Accused Product, Plaintiff faces a substantial risk of the loss of market share, damage to its customer relationships, and loss of business opportunities supports a finding of irreparable harm. *See id.*; *Celsis In Vitro, Inc.*, 664 F.3d at 930. Moreover, Plaintiff presents evidence that these damages are difficult, if not impossible, to calculate in terms of money damages. *See* (ECF No. 12-1 at ¶¶ 62, 65); *see also Celsis In Vitro, Inc.*, 664 F.3d at 930 ("There is no effective way to measure the loss of sales or potential growth–to ascertain the people who do not knock on the door or to identify the specific persons who do not reorder because of the existence of the infringer." (internal quotation omitted)).

As for the balance of harms, Plaintiff argues that the balance of harms weighs in its favor as shown by the fact that it is likely to succeed on the merits, and that any harm to Defendant was

a product of Defendant's calculated risk in infringing Plaintiff's patent.

When considering the balance of hardships, courts "must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017).

"Absent a preliminary injunction, [Plaintiff] would lose the value of its patent as well as suffer the irreparable harms" as attested to by Insalaco. *Celsis In Vitro, Inc.*, 664 F.3d at 931. Defendant represents that it knew of Plaintiff's patent prior to inventing the Accused Product. *See* (ECF No. 22 at 4) ("The patent attorney 'invented' a non-infringing product similar to the Sleek Socket® and pointed out serious validity issues with the key patent. . . ."). Thus, the preliminary record suggests that any potential losses on Defendant's part as a result of an injunction would be "the result of its own calculated risk in selling a product with knowledge of [Plaintiff's] patent." *Celsis In Vitro, Inc.*, 664 F.3d at 931 (Fed. Cir. 2012). Without a response from Defendant, Plaintiff's assertions are uncontroverted. Accordingly, Plaintiff has demonstrated the balance of harms does weigh in its favor.

As for public interest, Plaintiff argues that granting injunctive relief serves the public interest because it will enforce a valid patent. Plaintiff asserts that public has no critical interest in having Defendant continue to sell its product for concealing wall outlets to consumers. Conversely, Plaintiff asserts the public has an interest in enjoining cheap copies of patented inventions.

The Court recognizes that Plaintiff has a right to exclude based on its patent, just as Defendant generally has a right to compete. *Advantus, Corp.*, 2013 WL 12122313, at *11. In the present case, however, Insalaco attests to the fact that the Accused Product undercuts the price of its product on Amazon by approximately 20 percent. (ECF No. 12-1 at ¶ 17). "While the general

public certainly enjoys lower prices, cheap copies of patented inventions have the effect of inhibiting innovation and incentive.  This detrimental effect, coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products."  *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013).  "In sum, the public has a greater interest in acquiring new technology through the protections provided by the Patent Act than it has in buying 'cheaper knock-offs.'"  *Id.*  Accordingly, this factor also weighs in Plaintiff's favor.

C.    **Bond**

Federal Rule of Civil Procedure 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65.  The Court has the discretion to issue a preliminary injunction without requiring Plaintiff to give a security bond.  *TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225, 1234 (M.D. Fla. 2013) (citing *BellSouth Telecomms., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005)).

Because the Parties have not briefed what bond, if any, is proper in this case, the undersigned recommends that Plaintiff be required to submit a form of injunction, including its proposed amount of bond, within three days if the Court adopts this Report and Recommendation.

IV.   **RECOMMENDATIONS**

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Motion for Preliminary Injunction (ECF No. 12) be **GRANTED**.  It is further recommending that, after determination of the proper bond, that Defendant be enjoined, until this action is fully resolved, from making, using, selling, offering to sell, or importing into the United States, the

Accused Product and any other products that are not more than colorably different from it.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, by no later than **September 17, 2024**. Responses thereto are due no later than **September 24, 2024.**  Failure to timely file objections will bar a de novo determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 9th day of September, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE