UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-24517-LEIBOWITZ/LOUIS

SOCKET SOLUTIONS, LLC,

    *Plaintiff*,

v.

IMPORT GLOBAL, LLC,

    *Defendant.*

_____/

## ORDER AFFIRMING AND ADOPTING
## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon United States Magistrate Judge Lauren F. Louis's Report and Recommendation on Claim Construction [ECF No. 73] ("the C.C. Report"), entered on September 9, 2024, construing Claim 19 of U.S. Patent No. 9,509,080 ("the '080 Patent"). Judge Louis held a *Markman* hearing on claim construction on July 18, 2024. [*See* ECF Nos. 72, 78]. Prior to the *Markman* hearing, the parties submitted briefing on claim construction. *See* [ECF Nos. 70, 71, 78]. Both Plaintiff and Defendant filed timely objections to the C.C. Report on September 17, 2024 [ECF Nos. 82, 83] ("Objections"), but no responses were made.

Having reviewed and considered the C.C. Report in light of the Objections, the parties' claim construction briefs, Claim 19 of the '080 Patent and all exhibits attached thereto, and having conducted its own analysis of the record and the applicable law, the Court concludes that the C.C. Report is well-founded, consistent with the evidence presented, and supported by the law. The Court finds that the C.C. Report accurately relies on and applies the proper rules of construction. Giving all of the disputed claim terms their ordinary and customary meaning (that is, the meaning that the terms

1

would have to a person of ordinary skill in the art); and considering and giving primary weight to all of the intrinsic evidence (Claim 19 itself and the specification); and lastly, considering the extrinsic evidence presented, as appropriate, the Court finds that Judge Louis correctly construed all of the disputed terms, with a slight modification made by this Court as to two disputed terms ("minimize distance" and "approximately the same or less than").

Accordingly, for these reasons, the Court hereby **ADOPTS** the Magistrate Judge's C.C. Report and **AFFIRMS** the Recommendation on Claim Construction [ECF No. 73], with the slight modifications set forth in this Order. Defendant's Objections [ECF No. 83] to the C.C. Report are **OVERRULED**. Plaintiff's Objections [ECF No. 82] to the C.C. Report are **OVERRULED IN PART** and **SUSTAINED IN PART**.

## I.  LEGAL STANDARDS

### A.  Standard of Review.

In reviewing a Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record" to accept the recommendation. Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment, subdivision (b).

In a patent infringement case, the district court is obligated to conduct a *de novo* review of the portions of the report and recommendation to which objections have been made, as claim

construction and indefiniteness are decided as a matter of law. *See* Fed. R. Civ. P. 53(f)(4); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978 (Fed. Cir. 1995); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001).

### B. Claim Construction Principles.

The interpretation of the scope and meaning of disputed terms in patent claims is a question of law and exclusively within the province of a court to decide. *Markman v. Westview Instruments, Inc.*, 517 U. S. 370, 372 (1996). It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citations and quotations omitted). During a *Markman* determination, "[i]n construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'" *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2) (internal punctuation omitted); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (citation omitted) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim…. [T]he resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property.").

> We have frequently stated that the words of a claim "are generally given their ordinary and customary meaning." We have made clear, moreover, that *the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention*, i.e., as of the effective filing date of the patent application.

*Phillips*, 415 F.3d at 1312–13 (emphasis added) (citations and quotations omitted). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the

particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful.

*Id.* at 1314 (citations omitted).

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Id.* at 1316 (quotation and citation omitted).

> When construing patent claims, the court looks first to intrinsic evidence, then if needed, to extrinsic evidence. Intrinsic evidence includes the patent claims and specification as well as the patent prosecution file history. This evidence is the most significant source of the legally operative meaning of disputed claim language.

*CANVS Corp. v. United States*, 126 Fed. Cl. 106, 112–13 (Fed. Cl. 2016) (internal quotation and citation omitted).

There is no "rigid algorithm" or prescribed "sequence of steps" which the court must follow in considering these sources of evidence. *Phillips,* 415 F.3d at 1324. All that matters "is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.*

## II.    DISCUSSION

Both parties filed timely objections to the C.C. Report; each objects to the construction of different disputed terms. Defendant objects to the construction of three terms: (1) "cover", (2) "backplate", and (3) "pin" as used in "hot pin/neutral pin." [ECF No. 83 at 2–10]. Plaintiff, on the other hand, objects to the construction of two other terms: (1) "minimize the distance" [between the front plate and the backplate], and (2) "approximately the same or less" [than the thickness of the

4

cord]. [ECF No. 82 at 1–5]. The parties do not object to the construction of the term "thickness of the cord," which Judge Louis pointed out needs no construction as Merriam-Webster's definition of "thickness" suffices. [*See* ECF No. 73 at 17].

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the C.C. Report to which the parties object and has reviewed the remainder of the C.C. Report for plain error as discussed below. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

### A. Defendant's Objections

(i) *General Objection.*

As an initial matter, Defendant generally objects that the C.C. Report "d[oes] not acknowledge or address key arguments" presented by Defendant at the July 18, 2024, hearing, and that the Magistrate Judge "did not respond to key arguments presented by [Defendant] in its initial Claim Construction brief." [ECF No. 83 at 1]. Defendant does not specifically state what "key arguments" Judge Louis missed or ignored. Thus, the Court **OVERRULES** this objection.[1] *See Schultz*, 565 F.3d at 1361.

(ii) *Objection to the Court's Construction of the Term "Cover."*

Defendant objects to the Court's construction of the term "cover" because the Court uses the word "structure" (rather than Defendant's proposed term, "sandwich") to describe how the electrical components are enclosed within the frontplate and backplate. [ECF No. 83 at 2–3]. Defendant proposed construing "cover" to mean "[t]he portion of the apparatus that hides the standard indoor

---

[1] Defendant also seems to take issue with the amount of time allotted for the parties to make their objections to the C.C. Report. [*See* ECF No. 83 at 1]. The Court points out, however, that Defendant did not seek an extension for filing its objections to the C.C. Report. Further, Defendant indicated that it had sufficient time to respond to the C.C. Report when it sought leave for an extension to respond to the Report and Recommendation on Plaintiff's motion for a preliminary injunction [ECF No. 79 at 1], which the Court granted [ECF No. 81].

electrical wall outlet, and conceals the electrical components between the **sandwich** of the frontplate and backplate." [ECF No. 73 at 5 (citing ECF No. 70 at 7) (emphasis added)]. Judge Louis recommends that "cover" be construed as "a **structure** that encloses the electronical components and hides a standard indoor electric wall outlet." [ECF No. 73. at 6 (emphasis added)]. Defendant objects that the recommended construction "omits an important feature of the 'cover' which [Defendant argues] is in the form of a **sandwich**." [ECF No. 83 at 2 (emphasis added)]. Defendant contends that the Court's use of the word "structure" rather than "sandwich" "omits a necessary dominant feature of the 'cover' which appears to the eye like a 'sandwich' defined by two outer layers of the frontplate and the backplate with electronical components between the frontplate and the backplate." [*Id.*].

Judge Louis squarely addressed and rejected Defendant's "sandwich" construction for two reasons. First, Judge Louis determined that Defendant's proposal "would further narrow the construction as concealing the electrical components between the 'sandwich' of the frontplate and the backplate." [ECF No. 73 at 6]. Second, Judge Louis concluded that Defendant's proposed construction "interjects an unwarranted complication into an otherwise simple term." [*Id.*]. The Court completely agrees-- and adds that construing the term "cover" with the use of a metaphor or analogy like "sandwich" is inherently less precise, while using a term like "structure" is inherently more precise.

Judge Louis began her construction of the term "cover" with the body of Claim 19, which is broken into two subheadings—(a) a cover; and (b) an electrical cord extending therefrom. [*Id.*]. From there, Judge Louis explained:

> In this format, the Claim presents "cover" as a preamble to the ensuing body. The cover that is taught in Claim 19 includes but is not limited to a frontplate and backplate, as it is defined in Claim 19 to include at least one set of prongs positioned to correspond to the wall outlet. Read in light of the '080 Patent's specification, it is clear that the backplate, when attached to the frontplate, conceals the pins and ground wire, forming a cover that hides an outlet.

6

[ECF No. 73 at 6]. After applying proper rules of construction, Judge Louis adopted Plaintiff's proposed construction—"a structure that encloses the electrical components and hides the standard indoor electric wall outlet—as "captur[ing] the essence on which both sides agree." [*Id.*].

After reviewing all of the intrinsic evidence in the record— the '080 Patent, Claim 19 in particular, as well as the specification— the Court **ADOPTS** Judge Louis's construction of the term "cover." The Court concludes that Judge Louis construed the term "cover" as it would be read by a person of ordinary skill in the art—not only in the context of Claim 19 but also in the context of the entire patent, including the specification. Accordingly, Defendant's Objection to the Court's construction of the term "cover" as omitting the term "sandwich" is **OVERRULED**.

(ii) *Objection to the Court's Construction of the Term "Backplate."*

The bulk of Defendant's Objections is directed at Judge Louis's construction of the term "backplate." [*See* ECF No. 83 at 3–8]. Defendant proposed construing "backplate" to mean the "portion of the apparatus *closest to the wall outlet* when the apparatus is plugged into the wall outlet." [ECF No. 73 at 7 (citing ECF No. 70 at 7) (emphasis added)]. Judge Louis recommends that "backplate" be construed as "the *component of the cover, opposing the front plate*, that includes at least one set of electrical prongs." [ECF No. 73 at 12].

Defendant first objects that Judge Louis's construction of "backplate" lacks the requirement that the backplate be "closest to the electrical wall outlet when the cover is plugged in." [ECF No. 83 at 3]. Defendant contends that any construction of "backplate" must require the backplate to abut the wall outlet. [*Id.*]. To support its argument, Defendant points out that the '080 Patent stresses the importance of the thinness of the cover. [*Id.*]. To achieve maximum "thinness" of the cover, Defendant contends the backplate must be positioned against the wall outlet. [ECF No. 70 at 11]. Defendant cites the following language in the patent specification as supporting its proposed construction as follows:

7

> When the cover 15 is inserted in the underlying electric wall outlet 11 and the front face of the cover or outer or exterior surface of the frontplate component 12, resting on top of the backplate 14 which in turn is resting on top of the underlying electric wall outlet 11.

[ECF No. 70 at 8 (citing '080 Patent at 4:16–20)].

> In such alternative embodiments of the invention now shown for use in multi-gang outlets, the backplate component of the cover of the apparatus of the invention is sized to align and position over such standard indoor multi-gang electric wall outlet.

[*Id.* at 8–9 (citing '080 Patent 6:47–51)].

> The frontplate is sized to align and position over and curve slightly around the perimeter edge of the backplate component for a tight fit as described above that preferably requires no adhesive or screws to stay in place.

[*Id.* at 9 (citing '080 Patent at 6:51–55)].

Judge Louis considered and correctly rejected this argument. Limitations in the specification (as well as within alternative embodiments) such as those put forward by Defendant may *not* be read into Claim 19. [*See* ECF No. 73 at 8 (citing, among other cases, *Abbot Labs. v. Sandoz., Inc.,* 566 F.2d 1282, 1288 (Fed. Cir. 2009) ("When the specification describes a single embodiment to enable the invention, this court will not limit broader claim language to that single application 'unless the patentee has demonstrated a clear intention to limit the claim scope using word or expressions of manifest exclusion or restriction.'"))].

Upon *de novo* review, Judge Louis correctly found that Claim 19 does not evince a clear intention to limit "backplate" in the manner advanced by Defendant. Nothing in Claim 19 (or the patent specification) requires the backplate to be positioned immediately proximate to the wall outlet. Further, the Court agrees with Judge Louis's determination that Claim 19's requirement that the electrical components of the backplate be "positioned to correspond to the first receptacle of the wall outlet" lends no support for Defendant's construction. [ECF No. 73 at 10]. This language dictates only the "configuration of the prongs, not the backplate's proximity to the wall outlet." [*Id.*].

8

Defendant's second challenge to the recommended construction of "backplate" is the inclusion of the phrase, "that includes at least one set of electrical prongs." [*Id.* at 12]. Here, Defendant maintains "this 'requirement' was never mentioned by the Plaintiff and is a recent invention of the Court." [ECF No. 83 at 6]. Defendant contends that the "asserted function of concealing electrical components is not in Claim 19" as a function of the *backplate*. [*Id.*]. Rather, the "importance of the *cover concealing the wall outlet* is mentioned in the specification numerous times." [*Id.* (emphasis added)]. Along these lines, Defendant argues that reading Claim 19 to require the backplate to be comprised of "at least one set of electrical prongs" would invalidate Patent '080 "by having two separate sets of electrical components, one apparently inherent [in] the backplate, and the other added by the claim language." [ECF No. 83 at 7].

After careful consideration, the Court concludes that Defendant misreads Claim 19. Claim 19 itself defines "backplate" as "comprising at least one set of electrical prongs." Patent '080 at 9:3–4. Thus, Judge Louis's inclusion of the descriptive phrase "concealing electrical components" was taken directly from Claim 19. Accordingly, Judge Louis properly construed "backplate" to be limited by Claim 19's express terms.

Next, Defendant complains that the C.C. Report fails to cite authority by which the Court may construe a claim "term" to incorporate a claim "component." [ECF No. 83 at 7]. This argument is somewhat convoluted, as Defendant argues that incorporating "electrical components" (a claim component) into the construction of "backplate" (a claim term) is analogous to incorporating "frontplate and backplate" (components) into the term "cover", which Defendant says "was not done." [*Id.*]. However, Defendant's own proposed construction of the term "cover" included the terms "frontplate" and "backplate." [*See* ECF No. 70 at 7]. So, this argument is unpersuasive. That is particularly true in this case, given that the phrase "a backplate comprising at least one set of electrical prongs" is taken directly from Claim 19. *See* Patent '080 at 9:3–4.

9

Finally, Defendant requests that the Court "reconsider the importance of the position of the 'backplate' and include it in its proposed claim construction." [ECF No. 83 at 7]. Because "the backplate is identified many times in the specification of the '080 Patent as being in the physical back or (sic) the cover," any construction of "backplate" must require its placement at the back. [*Id.* at 8]. This argument has been made, rejected, reviewed *de novo*, and overruled. Judge Louis correctly found that the backplate is not limited to a particular position, but instead is constrained by its opposition to the frontplate.

After reviewing all of the intrinsic evidence in the record—focusing primarily on the '080 Patent, Claim 19 in particular, as well as the specification—the Court **ADOPTS** Judge Louis's construction of the term "backplate." The Court concludes that Judge Louis construed the term "backplate" as it would be read by a person of ordinary skill in the art-- not only in the context of Claim 19, but also in the context of the entire patent, including the specification. Accordingly, Defendant's Objection to the Court's construction of the term "backplate" is **OVERRULED**.

(iii) *Objection to the Court's Construction of the Term "Pin."*

Defendant's final Objection is to the construction of the term "pin" as used in "hot pin/neutral pin." Specifically, Defendant takes issue with Judge Louis's use of the word "means" rather than "mechanical system" to construe the term "pin." [ECF No. 83 at 8–10]. Defendant's proposed construction for "pin" is a "*mechanical system* for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." [ECF No. 70 at 12 (emphasis added)]. Judge Louis recommends a "*means* for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." [ECF No. 73 at 16 (emphasis added)].

Relying on testimony of Plaintiff's expert, Matthew Spenko, Ph.D., Defendant contends that "a 'pin' is a passive, physical structure, and cannot actively do any task." [ECF No. 83 at 10]. As a passive structure, Defendant maintains that the "pin" cannot be a *means for making an electrical connection.*

10

[*Id.*]. That argument seems to contradict Defendant's statement in its Objections that "the pins are the *points where the electrical connections are made.*" [*Id.* at 9 (emphasis added)]. Defendant's argument also seems to negate its own proposed construction of pin as a *mechanical system for making an electrical connection*. If a pin is passive such that it cannot be a *means for making an electrical connection*, then how can a pin be a *mechanical system for making an electrical connection*?[2] Regardless, the Court's *de novo* review of the '080 Patent finds ample support for Judge Louis's construction of the term "pin" as being a "means" for making an electrical connection [between the hot/neutral wire and the hot/neutral prong].

First, wherever the term "pin" appears in the specification, the term "electrical" modifies it: "The functional electrical plug has **electrical connection pins**" '080 Patent (Abstract); "**electrical pins**" '080 Patent at 2:16; "**The conductive electrical pins**" *Id.* at 4:49; "any visible **electric pins**" *Id.* at 4:58; "**electrical pins**" *Id.* 2:42–43; "**electrical pin**" *Id.* at 2:43; "**electrical pins**" *Id.* at 2:45; "**electrical pins**" *Id.* at 4:4; "**electrical pin**" *Id.* at 4:9; "**electrical pins**" *Id.* at 4:11; "**electrical pins**" *Id.* at 4:14; "**conductive** electrical pins"[3] *Id.* at 4:18; "**electrical pins**" *Id.* at 4:37; "**electrical pin**" *Id.* at 4:43–44; "**electrical pins**" *Id.* at 4:49; "**electrical pins**" *Id.* at 4:54–55; "**electrical pins**" *Id.* at 4:58; "**electrical pins**" *Id.* at 4:62; "**electrical** pins" *Id.* at 6:61. Nowhere in the specification does the term "pin" appear without such modifiers. Moreover, the use of the additional descriptors

---

[2] Judge Louis rejected Defendant's argument that "pin" was limited to a "physical clasp." [*See* ECF No. 73 at 13–16]. Defendant does not reargue the point in its Objections [*See* ECF No. 83 at 8–10].

[3] "Conductive" is an adjective defined by Merriam-Webster (2024) as "having conductivity: relating to conduction (as of electricity). https://www.merriam-webster.com/dictionary/conductive. "Conduction" is defined as "a transmission through or *means* of a conductor." https://www.merriam-webster.com/dictionary/conduction. "Conductivity" is defined as "the quality or power of conducting or transmitting such as the reciprocal of electrical resistivity." https://www.merriam-webster.com/dictionary/conductivity.

11

"conductive" and "electrical connection" lend support to Judge Louis's construction of "pin" as a "means" for making an electrical connection.

Second, wherever "pin" appears in the claims, the terms "hot" or "neutral" modify it. *See* '080 Patent at 7:33; 7:39–40; 7:47; 8:39–40; 8:44–45; 9:9; 9:18; 10:10. The parties did not dispute the meaning of the modifiers "hot" or "neutral." "[B]oth Parties agree that a person having ordinary skill in the art would understand that these terms refer to the direction of the [electrical] current flow." [*See* ECF No. 73 at 13 n.3]. The intrinsic evidence thus supports the term "pin" as being a "means for making an electrical connection."

Accordingly, the Court **ADOPTS** Judge Louis's construction of the term "hot pin/neutral pin." The Court concludes that Judge Louis construed the term "hot pin/neutral pin" as it would be read by a person of ordinary skill in the art not only in the context of Claim 19 but also in the context of the entire patent, including the specification. Accordingly, Defendant's Objection to the Court's construction of the term "pin" is **OVERRULED**.

In sum, the Court has reviewed *de novo* the recommended construction of claim terms "cover", "backplate", and "pin", and finds that the Magistrate Judge construed them as they would be read by a person of ordinary skill in the art. Accordingly, Defendant's Objections [**ECF No. 83**] to the C.C. Report [ECF No. 73] are **OVERRULED.**

    **B.**    <u>**Plaintiff's Objections**</u>

Plaintiff objects to the recommended construction of the terms "minimize the distance" and "approximately the same or less [than the thickness of the cord]." [ECF No. 82]. Although there is some overlap with these Objections, the Court initially addresses them in turn.

    (i) *Objection to the Court's Construction of the Term "Minimize the Distance."*

The entire claim phrase in which "minimize distance" appears is as follows:

> at least one hot pin, at least one neutral pin and optionally a ground wire positioned on or fastened or attached to the backplate of the cover in such manner as to *minimize distance* between the front plate and the backplate…

Patent '080 at 9–13 (emphasis added). Here, the parties disputed what "minimize the distance" means. [*See* ECF No. 73 at 17]. Although the parties put forward for construction the phrase "minimize *the* distance," Claim 19 does not include the word "the," which, upon the Court's *de novo* review, slightly impacts the construction as discussed below.

Judge Louis recommends that "minimize the distance" be construed to mean "no greater than the thickness of the cord." [ECF No. 73 at 19]. Plaintiff's proposed construction of "minimize the distance" means "positioning [the pins] in such a manner to avoid increasing the distance between the frontplate and the backplate *significantly* beyond the thickness of the cord." [*Id.* at 17 (emphasis added)]. Judge Louis considered and rejected Plaintiff's construction as inconsistent with the entire claim which "teaches that the height of the pins and ground wire are 'approximately the same or less than' the thickness of the cord." [*Id.*]. In other words, the patent teaches away from "more than" or "greater than" the thickness of the cord, and most especially, the patent teaches away from "significantly more." The Court agrees.

That said, when "minimize distance" (not "minimize the distance") is considered alongside "approximately the same or less than"— which is the subject of Plaintiff's second Objection—the analysis changes ever so slightly.

(ii) *Objection to the Court's Construction of the Term "Approximately the Same or Less Than."*

Judge Louis recommends that "approximately the same or less than" be construed as "approximately the same *but not greater than* the thickness of the cord." [ECF No. 73 at 19–20 (emphasis added)]. Plaintiff "urges the Court to apply the plain and ordinary meaning of the words '*approximately the same* or less than.'" [*Id.* at 19 (emphasis added)]. In its Initial Claim Construction brief, Plaintiff argued that the term "approximately" is a term of degree and that a person skilled in

13

the art would understand "approximately" with "reasonable certainty" as not requiring "absolute precision." [ECF No. 58 at 17–18]. Judge Louis agreed that the term "approximately" "[s]imilar to the term 'minimize the distance'… is a term of degree." [ECF No. 73 at 19]. Judge Louis, however, stressed that those terms of degree are "subject to the objective boundary of the fixed thickness of the cord." [*Id.*]. Judge Louis also disagreed with Plaintiff that construing the claim term phrase to mean "approximately the same but not greater than" read "approximately" out of Claim 19. [*Id.* at 20].

In is Objections, Plaintiff argues that "variance in the precise measurement, necessarily works in *both* directions;" yet, Judge Louis "conclude[ed] that this term of degree allows variance in only one direction"—less than. [ECF No. 82 at 2]. In other words, Judge Louis's recommended construction of the phrase "approximately the same or less than" as "not greater than" is really "exactly the same or less than." [*Id.* at 4]. Plaintiff's point is well-taken.

Combining "minimize distance" [between the plates] with [the height of the pins being] "approximately the same or less than" the thickness of the cord, the Court is convinced that slight modifications to the recommended constructions are in order. Judge Louis correctly points out in her Report and Recommendation on Plaintiff's Application for a Preliminary Injunction that, because the electrical cord lies between the frontplate and backplate, the plates can *never* be separated by *less than* the thickness of the cord. [*See* ECF No. 74 at 9–10 (emphasis added)]. So, construing "minimize distance" to mean "no greater than the thickness of the cord" requires the plates to be separated exactly by the thickness of the cord. Had the patentee intended an exact measurement, it would not have employed a term of degree ("minimize distance" or "approximately"). Construing "approximately the same or less than the thickness of the cord" to mean "no greater than the thickness of the cord" requires the pins to be positioned at exactly the same (or less) thickness of the cord; thereby, eliminating the term "approximately."

14

In sum, the Court agrees with Judge Louis that "minimize distance" and "approximately the same or less than" are terms of degree that allow some variance, and that those terms of degree are tied to the fixed boundary of the thickness of the cord. The Court also agrees with Judge Louis that Patent '080 teaches away from "significantly" more or greater than the thickness of the cord as proposed by Plaintiff. That said, the Court slightly modifies the recommended constructions for "minimize distance" and "approximately" and ADOPTS the following:

(1) "Minimize Distance" means "in such a manner as to reduce or keep at a minimum" the distance between the frontplate and backplate given the thickness of the cord.

(2) "Approximately the Same or Less Than" is construed under the terms' ordinary meaning as "approximately the same or less than the thickness of the cord."

Accordingly, Plaintiff's Objections [**ECF No. 82**] to the C.C. Report [ECF No. 73] are **OVERRULED IN PART** and **SUSTAINED IN PART**.

## IV. CLAIM CONSTRUCTION

In view of the foregoing, the Court construes the following terms as used in Claim 19 of the '080 Patent:

1. "Cover" is construed to mean "a structure that encloses the electronical components and hides a standard indoor electric wall outlet."

2. "Backplate" is construed to mean "the component of the cover, opposing the front plate, that includes at least one set of electrical prongs."

3. "Pin" is construed as "a means for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong."

4. "Minimize Distance" means "in such a manner as to reduce or keep at a minimum" the distance between the frontplate and backplate given the thickness of the cord.

5. "Approximately the same or less than the thickness of the cord" is construed under its ordinary meaning as "approximately the same or less than the thickness of the cord."

6. "Thickness of the cord" is construed to mean the smallest of the cord's three dimensions, *i.e.,* not width or length, but thickness.

## V.    CONCLUSION

Having carefully reviewed the parties' claim construction briefing [ECF Nos. 59, 70, 71], the Report and Recommendation on Claim Construction [ECF No. 73], the Objections [ECF Nos. 82, 83], the transcript from both hearings [ECF Nos. 62, 72, 77, 78], the factual record, the applicable law, and being otherwise fully advised, it is hereby **ORDERED AND ADJUDGED** that the Report and Recommendation on Claim Construction [**ECF No. 73**] is **AFFIRMED AND ADOPTED** as modified by this Order.  Defendant's Objections [**ECF No. 83**] to the Report and Recommendation on Claim Construction [ECF No. 73] are **OVERRULED**.  Plaintiff's Objections [**ECF No. 82**] to the Report and Recommendation on Claim Construction [ECF No. 73] are **OVERRULED IN PART** and **SUSTAINED IN PART**.[4]

**DONE AND ORDERED** in the Southern District of Florida this 27th day of September, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    counsel of record

---

[4] The Court includes and incorporates the Exhibits attached to this Order found in the docket at ECF Nos. 1, 12, and 12-1.

*Socket Solutions, LLC v. Import Global, LLC*, **No. 1:23-cv-24517-DSL (S.D. Fla.)**
**Exhibits to Orders Adopting Reports and Recommendations ECF Nos. 73, 74**



[ECF No. 1 ¶ 29].



[ECF No. 12-1 ¶ 18]

*Socket Solutions, LLC v. Import Global, LLC*, **No. 1:23-cv-24517-DSL (S.D. Fla.)**
**Exhibits to Orders Adopting Reports and Recommendations ECF Nos. 73, 74**





[ECF No. 12 at 15].

*Socket Solutions, LLC v. Import Global, LLC*, **No. 1:23-cv-24517-DSL (S.D. Fla.)**
**Exhibits to Orders Adopting Reports and Recommendations ECF Nos. 73, 74**





[ECF No. 12 at 15, 12].



[ECF No. 12 at 13].

*Socket Solutions, LLC v. Import Global, LLC*, **No. 1:23-cv-24517-DSL (S.D. Fla.)**
**Exhibits to Orders Adopting Reports and Recommendations ECF Nos. 73, 74**



[ECF No. 12 at 25].